MELVIN D. PATRON, Plaintiff, v. ESTHER WITKIN and HERMAN FLYER, Defendants.

Supreme Court, Kings County, June 25, 1930.

*Rabbino & Rabbino*, for the plaintiff.

*Henry Seiden* [*Geo. W. Titcomb* of counsel], for the defendants.

SENN, J. The plaintiff, a real estate broker, sues to recover commissions on a real estate transaction. On the trial it was stipulated that the court try the case without a jury and render a verdict with the same force and effect as if rendered by a jury. I have accordingly rendered a verdict of " no cause of action," and could stop there, but feel that those concerned have a right to know by what process I reached that decision.

Through the efforts of the plaintiff and under his employment by the defendants there were negotiations between the defendants and the Starren Realty Corporation of 1945 East Fifth street, Brooklyn, which on December 18, 1929, resulted in the signing of a written agreement by which the corporation agreed to purchase of the defendants their apartment house at 3223 Glenwood road, Brooklyn, N. Y., the title being in the defendant Esther Witkin but the chief beneficial interest was in the defendant Herman Flyer.

The writing was quite informal, but it can be read therefrom that the Glenwood avenue property was valued at $188,000 subject to a first mortgage of $111,250, amortizing $1,250 semi-annually, and a second mortgage on which was due and unpaid $40,000, leaving an agreed equity of $36,750 to be paid as follows: By the conveyance to defendants of three houses in Twentieth avenue in which there was an agreed value or equity above incumbrances

| | |
|---|---:|
| of | $19,500 00 |
| Cash | 14,250 00 |
| By a second mortgage due 1930 | 3,000 00 |
| Total | $36.750 00 |

It was not specified what property the $3,000 second mortgage was to incumber but if the Glenwood road house was intended, it would be a third mortgage. The terms of the second mortgage of $40,000 were to be arranged at contract closing. Formal contract to be drawn December 19, 1929.

It is not perfectly clear from the writing or from the evidence whether the $40,000 mortgage already on the Glenwood road premises was to remain or whether it was to be satisfied and a new second mortgage of $40,000 was to be given by the purchaser. Neither is it important, because the $40,000 mortgage was owned by the wife of the defendant Flyer and was under his control.

It seems that Mrs. Flyer had once assumed to foreclose her mortgage and the property was bid in by the defendant Esther Witkin who is the sister of the defendant Herman Flyer. Mrs. Witkin received a deed but paid no consideration and it does not clearly appear whether the $40,000 mortgage was satisfied by operation of law or otherwise.

However that may be, there was to be and remain a second mortgage of $40,000 on the Glenwood road premises, the terms of which were to be arranged at the closing of the contract. These terms were never agreed upon.

On the day appointed for closing the contract the parties met at the office of Henry Seiden, then and now attorney for the defendants, to discuss the terms of the formal contract. It is practically undisputed that it was agreed that the $40,000 mortgage was to run for five years and that it should in the meantime be reduced at the rate of $5,000 per year. Defendants claim that it was insisted by them that the payments should either be made monthly or that Mat M. Smith, an officer of the Starren Realty Corporation, would become liable on a bond to secure the payment on the mortgage, and that because of the refusal to comply with this demand, the minds of the parties never met. Plaintiff claims that this demand was not made except as an afterthought and not until after it had been agreed that the payments were to be at the rate of $1,000 per quarter. As to this there is a flat contradiction between the plaintiff and Mat M. Smith on the one side and the defendant Flyer and Mr. Seiden on the other. The testimony of Mr. Smith, as far as it goes, seems to corroborate that of the plaintiff, but is less positive in its terms. If this were the only phase of the matter, I might entertain some doubt as to which is true. But it was testified by both Mr. Flyer and Mr. Seiden that in the course of the negotiations, Mr. Smith, acting for the corporation purchaser, asked when the first mortgage would become due and on being told that it would mature April, 1931, stated that he wanted the agreement as to the second mortgage to provide that in case the holder of the first mortgage should call in any sum in excess of $5,000 the mortgagee should advance such excess; that after a consultation with his attorney in a separate room Mr. Flyer refused to accept this condition and that it was then and there agreed by the respective parties (Mr. Flyer and Mr. Smith) that they could not get together. According to this, a condition was imposed by Mr. Smith, quite natural on his part, but which Mr. Flyer could not in reason be expected to accept. This testimony was not contradicted by the plaintiff, who was present in court, nor by Mr. Smith, who was called in rebuttal after Mr. Flyer and Mr. Seiden had been sworn.

This, together with the fact that the terms of the proposed $3,000 mortgage to be given by the purchaser were not discussed at all, convinces me that the conference broke up without any agreement having been reached, and that the minds of the parties to the proposed sale or exchange never met as to the terms of the $40,000 mortgage and that the failure to agree was not due to any bad faith, capriciousness or other fault of the defendants.

As held in *Hagen* v. *Sahlen* (226 App. Div. 271) (and in fact it is elementary), before plaintiff can recover his commissions under such a contract he must show either that an enforcible contract of sale resulted from his efforts or that his efforts were rendered a failure by the fault of the defendants, after producing a purchaser who was ready, able and willing to purchase on the prescribed terms. This he has failed to show and the verdict must be as stated.